SEPT. TERM.    St. Boat Gen'l. Brady and G. Collier owner, appellants
    1840.                        v. Buckley and Randolph.

Steam Boat    1. Merchandise furnished the master of a steam boat, for the purpose
Gen'l Brady.       of enabling him, therewith, to purchase wood and other necessaries
    v.             for the boat in the prosecution of her trip, becomes a "debt contract-
Buckley and        ed by the master, on account of supplies furnished for the use of such
Randolph.          boat," within the meaning of the 1st sec. of the act concerning
                   "boats and vessels."
              2. The lien on boats and vessels, arising under the provisions of the act
                   of Feb. 12, 1839, (Laws of Mo. session 1838-9, p. 13,) is divested by
                   proceedings and sale under the act of March 19, 1835, at the suit of
                   any person holding a lien, without regard to the date of such lien,
                   and the purchaser at such sale, will hold the boat discharged of all
                   liens.

Appeal from the circuit court of St. Louis county.

*Spalding and Tiffany for Appellants.*

1st. That the cause of action sued on by the appellees,
was not a lien upon the boat under the statute, acts of as-
sembly of 1838–9 p. 12; Abbot on shipping 104, 107; 3
Kent's Com. 132–3.

2nd. That if it was a lien, yet the lien was divested by
the proceedings and sale upon the justice's judgment, 2,
bac. abr. 721. 4, east 345.

*Hamilton for Appellees..*

But two questions arise here: Is this a lien within the act?
If it be, did George Collier purchase subject to it? R. Laws
p. 102. Act of February 12, 1839. 5th vol. Mo. Reports,
256. 3 Kent 163, 157, 96, 170. 6 Mass. 426. 7 Cowen
670. 4 T. R. 411. 4 Cowen 469.

*Opinion of the Court by Tompkins Judge.*

McGirk, Judge, not sitting.

Buckley and Randolph brought their action in the circuit
court of St. Louis county against the steam boat Gen. Bra-
dy, and there had judgment. From that judgment the boat
appeals.

The bill of exceptions shows this agreed case: that on
the 3d day of July, 1837, Buckley and Randolph duly caused
the said steam boat to be seized and levied on, so far as that
could be done under the state of the case, under the act of
9th March, 1835, and the act of 12th February, 1839, sup-
plementary thereto. Said boat then being in the hands of
the constable, upon the demand in the complaint of Buckley

and Randolph specified; that this demand accrued within six months next preceding the commencement of this action, to wit, on the 15th day of May. 1839, under these circumstances: On the said 15th day of May the said boat, being then about to depart on her voyage up the Missouri river, from St. Louis as far as Independence, the master of the said boat applied to the plaintiffs (with whom he had previous dealings of the same kind, the plaintiffs then being and for some time previous having been the agents of said boat) for about, as he said, the sum of two hundred and fifty dollars, to enable him to pay his expenses for wood and stores on the voyage; that the plaintiffs stated they had no money to advance to the boat at that time. The master then asked the plaintiffs to procure him salt, which it was thought would the more readily enable him to raise the funds necessary for the purpose stated. To this proposition the plaintiffs not assenting, the master said he would take coffee to dispose of on the voyage. The plaintiffs then delivered him fifteen sacks of coffee, out of which he was to bear his expenses, and restore the remainder on his return. On his return he delivered to the plaintiffs eight sacks, having disposed of seven; that as agents, the plaintiffs had frequently loaned or advanced money to the boat, and sometimes as much as five hundred dollars for expenses; that at the time the said debt was contracted, it was customary at this place, for agents of boats to advance money for such purposes, when the boats were about to depart on their voyage; and that the sum advanced by the plaintiffs for the Brady was moderate; that the said boat was then owned in part in St. Louis, and that the master was a part owner. It was also agreed that on the day the boat was levied on by the sheriff as aforesaid, she was in the hands of the constable, and remained in his possession when she was released, bond and security being given in conformity to the statute, by George Collier (who now defends this suit) and William G. Pettus. It was also agreed, that before the boat was levied on as aforesaid, by the sheriff, to wit, on the second day of July, in the year 1839, under and by virtue of sundry warrants issued by several justices of the peace of the township and county of

SEPT. TERM.
1840.

Steam Boat Gen'l. Brady.
v.
Buckley and Randolph.

SEPT TERM  St. Louis, at the suits of different plaintiffs, for sums within
1840.   their respective jurisdictions; and for causes which were
Steam Boat  respectively liens upon the boat under the said statutes; (and
Gen'l Brady  some of which causes of action were for wages of hands and
v.
Buckley and  crew then just accrued,) all which warrants were directed
Randolph.  and delivered to the constables of St. Louis township on the
second day of July aforesaid, and that they on that day le-
vied upon and seized according to law the said boat, and
took and retained her in custody so far as they could, until
they sold it; and that on the said 2nd day of July judgments
were rendered against said boat in all the causes commenced
as aforesaid on that day; and executions, called orders of
sale, were duly issued to the constables thereon; upon which
the constables sold the said boat on the 15th day of July,
and George Collier became the purchaser, and the boat was
delivered to him.   But the sheriff insisting on his levy, Col-
lier gave his bond in the suit.   The constables gave Collier
a deed conveying to   him   the   boat.   The   appellant,
moved to set aside the verdict and for a new trial, the mo-
tion being overruled the appeal was taken.

The act of 19th March, 1835, provides that every boat
or vessel used in navigating the waters of this State, shall
be liable 1st, for all debts contracted by the master, owner,
agent, or consignee thereof, on account of supplies furnished
for the use of such boat or vessel, &c., see section 1st.
And the act of 12th February, 1839, declares that there shall
be a lien on every boat or vessel, used in navigating the wa-
ters of this State, for all debts contracted by the master,
owner, agent, or consignee thereof, on account of stores and
supplies furnished for the use thereof.

Two points are to be decided to ascertain the merits of
this cause;

1st, Was the money claimed as the price of the coffee, a
debt within the provisions of these two acts?

2d, Does the priority of the levy, or the priority of time
at which the demand accrued, entitle the claimants to a pre-
ference in having their claim satisfied?

Merchandise   1st. Boats cannot be expected to take with them all the
furnished the
master of a  stores and supplies necessary for so long a voyage as that

for which this boat appears to have been making provision, when the coffee was advanced. If the appellees had furnished the master money to purchase stores or supplies for the use of the boat, this could not, under a strict construction of the acts, have been called stores and supplies, or either of them; and yet the money to purchase these stores and supplies is as necessary for the success of the voyage as the labor of the men employed in navigating the boat. The boat could not reasonably expect a credit at every wood yard, and at every farm on the river where it might be necessary to purchase supplies for the comfort and accommodation not only the boats crew, but also of the numerous passengers frequently found on board of these boats. A liberal construction of the law, then, is necessary for the advancement of the remedy which the legislature seemed to contemplate in enacting these laws, I am then inclined to think that, under this provision of the law, ought to be included not only money to purchase stores and supplies for the use of the boat; but also this coffee furnished by the appellees at the request of the master. Owners ought to employ none to navigate their boats but such as deserve their confidence; so far as trusted to make contracts necessary to expedite and accomplish the voyage, it is better for them to risk the integrity of the master than that their boats should be delayed for want of the means of purchasing stores and supplies.

2nd. It is admitted on the record, that the demand of the plaintiffs accrued on the 15th day of May, 1839, and in point of time is prior to those under which the constables' sales were made. Collier, who defends here as owner of the boat, claims under a deed made to him by the constable, as purchaser at his sale. If it be decided that the sale under the constables' warrants is made subject to the plaintiff's demand, because that demand accrued first, then the consequence will be that no man will ever be safe in selling a boat for such a demand, unless he wait till the last moment of the six months limited by the statute, within which his action must be commenced. The only safe standard of the value of an article is the price it will bring at a fair sale. It is in

SEPT. TERM
1840.

Steam Boat
Gen'l. Brady
v.
Buckley and
Randolph.

steam boat, for the purpose of enabling him, therewith, to purchase wood and other necessaries for the boat in the prosecution of her trip, becomes a "debt contracted by the master, on account of supplies furnished for the use of such boat," within the meaning of the 1st sec. of the act concerning 'boats and vessels.'

The lien on boats and vessels arising under the provisions of the act of Feb. 12, 1839, (laws of Mo. sess. 1838-9, p. 13,) is divested by proceedings and sale under the act of March 19, 1835, at the suit of any person holding a lien without regard to the

SEPT. TERM
1840.

Steam Boat
Gen'l Brady
v.
Buckley and
Randolph.

date of such
lien; and the
purchaser, at
such sale,
will hold the
boat dischar-
ged of all
liens.

evidence that this boat was offered for sale in conformity with the provisions of the 16th section of the act of 19th March, 1835, above mentioned, and that nobody would agree to pay the amount of the several warrants in the hands of the constable for less than the whole interest in the boat. No man would bid for a boat offered for sale as this was, if he were apprised that after buying once under a sale for the benefit of creditors, whose demands had accrued within a few days before the commencement of the suit, he would be still liable either to lose his boat, or to pay all the debts which that boat might have incurred within the six months next preceding the commencement of the suit under which he claims title. But the policy of the law is to favor the diligent. The suitors before the justice were most diligent; they commenced their action on the second of July; the plaintiffs did not commence their action till the following day, viz: the third. Had the suitors before the justice waited five months, the appellees might have waited a day longer, and the consequence might have been the same; indeed, the suitors before the justice might not have known of the existence of the appellees' demand, and if they did, they certainly did not and could not know that the appellees ever would sue.

To construe this law in any other way than to give the preference to those who first commenced their suit, would be to render the law a nullity. It would be worse than nothing. It would give the owners an opportunity of collusion with those who held the elder demands, to deter those whose demands were of later date from suing. Laws ought to be so construed as to advance the remedy instead of construing them so as to defeat it. To suppose that the legislature intended to compel by this indirect method each person having a claim on a boat to wait till all those who had claims of an older date should sue, is to suppose, as it seems to me, a strange thing, an impossibility, unless the same law had made it the duty of these older claimants, under pain of forfeiture, to register their claims with some officer. Such an absurdity cannot be supposed. The law was intended then to subject this boat to be sold for the benefit of the

most diligent. The boat was sold for the benefit of the most diligent; that is to say, for the claimants whose warrants were issued on the 2nd day of July. The circuit court then in my opinion committed no error in deciding that the coffee furnished by Buckley and Randolph raised a debt against the boat within the provisions of the statute. But in my opinion that court did commit error in deciding that the boat was sold on the 2nd day of July by the constable subject to the lien of the plaintiffs appellees in this action, and its judgment is therefore reversed.