Judge Ryland
delivered the opinion QÍ the court.
The plaintiffs in, the court below, appellants here, commenced their action in the St. Louis circuit court at the April term, 1848, agaipstthe steam boat Pride of the West, under the statute of this State concern-, ing "Boats and Vessels.”
The following is that part of the complaint which sets forth the demand in all its particulars: "On the twentieth day of December, eighteen hundred and forty-seven, a't the city of St. Louis, in said county,, the complainants at the special instance and request of, and under contract with said John H. Chambers, then master and part oviner of sai<| *373 boat, and as such master, supplied, furnished, and advanced to said Chambers as such master, for the use of said boat, and tobe used in or about the business thereof, money to the amount of three hundred and sixty dollars ; and the §aid Chambers in consideration of the premises* and as such master, and on behalf of said boat and owners, then and there undertook and promised the complainants that said sum should be paid to said complainants in the same day aforesaid.5> Upon this complaint a warrant issued, the boat was tallen into custody, and the defendant and the owners off the boat afterwards appeared to the action and file their statutory plea. Upon the trial of this issue the plaintiffs produced as a witness John H. Chambers, who stated that he was master of the steam boat Pride of the West o,n the 20th of December, and had been such master for some time. “On the day last named, he borrowed of the plaintiffs $3.60 on account of the boat: that Mr. Bryan* one of the plaintiffs, gave him the check of the firm for the money, and that he took the check and got the money. Witness stated that he did not know Mr. Miltenberger personally: stated that he wanted the money for the use of the boat, and so appropriated it. Witness said he used the money in this instance to take up a draft he had drawn in New Orleans on the boat, payable in St. Louis and on account of the boat. Witness stated that he did not recollect that he informed Mr. Bryan to. what particular use he intended to apply the money: that he had promised to return the money the same day, but failed to comply: nor had the money ever been paid to plaintiffs to his knowledge. Witness had frequently borrowed money of the plaintiffs for the use of the boat, and had, in a short time, returned the same out of the proceeds of the boat’s earnings. Witness stated that the draft to which this money was applied was drawn by him in New Orleans, payable at St. Louis on the. boat, and was probably due some two or three weeks before this time.. Witness stated that he did not know whether any entry had been made in-the books of the boat in reference to this money borrowed of the plaintiffs.”* This statement contains all the material facts of this case, and upon these facts the plaintiffs prayed the following instruction:
“If money was loaned or advanced by the plaintiffs to the master of' the steam boat “Pride of the West” for the use of the said boat, the. application of the money by the master to the payment of an old debt,, does not affect the right of the plaintiffs.”
This instruction was refused, and the plaintiffs excepted.
The court then upon the application of the defendant’s counsel, gave-the following instructions :
*374 1st. If the jury believe from the testimony that the plaintiffs lent the money to Capt Chambers, of the steamboat “Pride of the West,” and that the said money was borrowed by said Chambers for the purpose of paying an old draft drawn by the captain on account .of the boat, and that he applied the money toward the payment of said draft, that the boat is not liable in this form for said money.
2d. The captain of the steam boat “Pride of the West” had no power generally to borrow the money on the credit of the boat.
The plaintiffs objected to the giving of these instructions, and excepted to the giving of each one of them. The jury .having found a verdict for the defendants, the plaintiffs moved the court to set aside the verdict and grant them a new trial, and assigned, among others, the following reasons:
“The court erred in the instructions given to the jury.”
“The court erred in. refusing the instructions asked for o>n, behalf of the plaintiffs.”
The court refused to grant a nevv trial, and the plaintiffs appealed to this court, and now seek a reversal of the judgment below principally for the reasons above set forth in their motion for a new trial.
This case depends upon the construction which shall be given to the statute of our State concerning “Boats and Vessels.” The first section of which declares that “Every boat or vessel used in navigating the waters of this State, shallbe liable and subject to a lien in the following cases:”
First, “For all wages due to hands or persons employed on board such boat or vessel, for work done or services rendered on board the same, except for wages which may be due to the master or clerk thereof.”
Second, “For all debts contracted by the master, owner, agent, or consignee of such boat or vessel, on account of stores or supplies furnished for the use thereof,” &c., &c.
The plaintiffs demand is for so much money, cash, furnished to the master of the boat. It is not for stores or supplies, strictly speaking, but for an amount of money which the master needed and used, in order to pay a draft drawn by him in New Orleans on the boat, and payable in St. Louis. This money was furnished and used to pay a draft, which at the time was due and had been due some two or three weeks. It does not appear that any account of the transaction was kept or noticed on the books of the boat. It was simply a lending of so much money to the master of the boat, and which lie applied to pay the debts of the *375 boat. Was such a transaction as this in contemplation by our Legislature when this statute was enacted ?
In the case of tire Gen’l. Brady vs. Buckley, 6 Mo. Rep. 558, this court held that merchandize furnished to the master, in order to enable him to obtain necessaries for the boat by disposing of such merchandize, created a lien on the boat, and was within the meaning of the statute. I see not much cause to find fault with that decision. I do not feel disposed, however, to carry this doctrine of lien any further than it was carried in that case. It was said by the court in the case above cited, that money advanced to purchase supplies and stores for the boat, should be included under a liberal construction of the statute. I have no doubt of the propriety of this construction. A plaintiff may, therefore, advance money to the master or other agent of a steam boat in such a manner as to create a lien under this statute on the boat. But at the same time I hold it to be his duty, in order to come within the meaning of this statute, that whilst he is in treaty about the loan or advance of the money, he should endeavor to ascertain or to be informed of the intended purposes for which the advance or loan is sought, or of the appropriation to which the money is designed. The lender has it in his power to make his advances or loans of money a lien on the boat, and it is at his peril, should he make them under such circumstances or for such purposes as are not within the statute. He can require of the master or other agent of the boat, a declaration of the purposes for which the money is wanted, and he can expressly declare himself the causes for which he loans it; and if the loan or advance be made in order to purchase or procure stores or supplies, for the boat or vessel, a lien will attach upon such advancement of money just as much as if the debt was contracted for the stores or supplies specifically. I hold that when money has been advanced to a master or other agent of a boat for the purpose of enabling him to procure stores or supplies for his boat, that such lender is not bound to look after such master or agent, and to see how he appropriates the money thus borrowed. Whenever the contract of borrowing is complete, and the cause of such borrowing is made known at the time, and is for the purposes contemplated by the statute, then the lender has a lien, notwithstanding the master or other agent should betray the confidence or trust reposed in him, by immediately afterwards, without the consent or collusion of the lender, perverting the money acquired to any other and quite a different purpose. In order to make the lien, the money must be advanced for the purpose of procuring, obtaining, or paying for stores or supplies furnished the boat.
*376 If a man therefore will, like the plaintiffs in this case, advance money to a steam boat captain, without any explanation or understanding for what purpose such m'ohey is borrowed^ (should it be even fof the purpose of paying an old debt, and appropriated accordingly) I hold that life has no lien on the boat over which such man is captain, and that he must resort to his common law action. I, therefore, find no error in the circuit court in giving and refusing the instructions as set forth in the bill of exceptions, fend in overruling the motion for a new trial. And tny brother judges concurring hterein* the .judgment below is affirmed.