## THE GENERAL TOMPKINS.

*(Circuit Court, S. D. Mississippi. October, 1881.)*

1. 2 REV. ST. MO. 1879, § 4225—LIENS.

   By the provisions of 2 Rev. St. Mo. 1879, § 4225, debts contracted by the owner of a steam-boat on account of stores and supplies furnished for its use, and on account of labor done and materials furnished in repairing, furnishing, and equipping it, are made liens on the boat. *Held,* that one who furnishes money with which to pay off such liens has a lien on the boat to the amount of his advances.

2. CONSTITUTIONAL LAW.

   Parts of the same statute may be valid, and other parts void.

3. LIENS UNDER STATE LAWS.

   Liens given by the local law of the state of Missouri at the home port of the vessel will be recognized by this court.

In Admiralty. On appeal.

PARDEE, C. J. The intervenor claims proceeds in the registry of the court resulting from the sale of the steam-boat Gen. Tompkins, on the ground that under the laws of the state of Missouri the intervenor has a lien thereon by reason of having paid, at the request of the owner, debts contracted by the owner on account of stores and supplies furnished for the use of the said steam-boat, and on account of labor done and materials furnished in repairing, furnishing, and equipping the said boat. See 2 Rev. St. Mo. 1879, § 4225. The district court having allowed this claim of the intervenor, the owners have appealed.

1. It is objected that under the law of Missouri the intervenor has no lien, as he furnished nothing himself giving a lien, but only furnished money and paid off existing liens. It will be noticed that the wording of the statute is "for all debts contracted, etc., on account of stores and supplies, on account of labor," etc. Where the labor has been done, and the supplies, etc., furnished, and a lien results, it would seem that money used to pay off such liens would be on account of such labor and supplies furnished, etc. But the decisions cited from the supreme court of Missouri, on this question, leave no doubt. See *Bryan* v. *Pride of the West,* 12 Mo. 371; *Gibbons* v. *Fanny Barker,* 40 Mo. 254. In this last case the court says: "Money loaned for the specific purpose of enabling a boat to purchase supplies, or to pay wages or debts incurred already, or to be incurred in future, for things which are liens, have been held to be a debt contracted for those things, and therefore a lien also on the boat;" and

cites *Bryan* v. *The Pride of the West*, 12 Mo. 371; *The Gen. Brady*, 6 Mo. 558; *The Eureka*, 14 Mo. 532. I am of the opinion that under the Missouri law the intervenor had a lien.

2. It is objected that the intervenor has no lien that this court can recognize, because the Missouri lien law, under which the lien is made, is in conflict with the constitution of the United States. The remedy given by the Missouri law is, in all probability, unconstitutional. The cases cited—*The Moses Taylor*, 4 Wall. 411; *The Hine* v. *Trevor*, Id. 555; and *The Belfast*, 7 Wall. 644—are clear on this point. But I think the right given by the Missouri laws can be easily separated from the remedy given by those laws. Section 4225, entire, is not obnoxious, but is clearly within state authority, as recognized by the supreme court of the United States. See *The Lottawanna*, 21 Wall. 581, 582. The following sections of the Missouri statutes relating to priorities and remedies may be stricken out and this section will stand by itself.

3. It is also objected that the lien given by Missouri at the home port will not be recognized out of the state, and that this court ought not to recognize such a lien. No authorities are cited in support of this position save those cited in Desty, Adm. § 89, which probably were all cases of priority. In this circuit, where priority was not involved, such domestic liens have been recognized. See *Carroll* v. *Leathers*, 1 Newberry, 436; *The Katie*, 3 Woods, 182; and Judge Hill in this case. See, also, 1 Brown, Adm. 542.

4. It is further objected that the demand of the intervenor is prescribed as a lien under the law of Missouri, because no suit was instituted to enforce it within nine months from its creation. Section 4268 of the Revised Statutes of Missouri reads:

"All suits upon liens in any other than the first class shall be commenced within nine months after the true date of the last item in the account upon which the action is founded; and any failure to commence suit, as in this or the last preceding section required, shall discharge the boat or vessel from the lien of the demand claimed."

The demands for liens in this case are not within the first class referred to. No suit under this section has been instituted in Missouri at all; and the demand sued on here was filed June 1, 1881. It follows that all the liens claimed as arising nine months prior to that date are within the statute, and ceased to have any effect as against the Tompkins.

The libel of intervention and the evidence show that the debts

paid from which liens arose were paid from time to time from August, 1880, to October, 1880. Each payment constituted a separate lien, from which it follows that all payments made prior to September 1, 1880, had ceased to be liens on June 1, 1881, when the district court acquired jurisdiction. This settles all the claims made in the first article of the libel of intervention, as they are laid during August, 1880. Under the second article of the libel the claims are alleged as arising (and the exhibits show the fact) during the months of August, September, and October, 1880. Such as are of date prior to September 1st, are proscribed, and were dead liens when the libel was filed.

On this second article of the libel of intervention a reference is required to ascertain dates and facts. On the whole case appealed t<sub></sub> accompanying decree will be entered.