168 So.2d 211

**STATE of Alabama**

v.

**LYKES BROTHERS STEAMSHIP COMPANY, Inc.**

**1 Div. 85.**

Supreme Court of Alabama.

Oct. 22, 1964.

---

Richmond M. Flowers, Atty. Gen., and B. Frank Loeb, Asst. Atty. Gen., for appellant.

Armbrecht, Jackson, McConnell & De-Mouy, Mobile, for appellee.

PER CURIAM.

This is an appeal from a final decree of the Circuit Court of Mobile County, in Equity, granting appellee relief sought in a bill of complaint. The bill was filed as a statutory appeal from a deficiency assessment by the Department of Revenue of the State of Alabama against appellee for sales tax allegedly due the State under the sales tax statute of this state. The State Department of Revenue levied the assessment on purchases of certain dunnage which appellee claims, and the trial court found, to be exempt by statute from such tax. The State here appeals to review the decision granting the exemption and vacating the assessment.

The exemption statute which appellee claims has application to its purchases of dunnage was originally § 755(t), Title 51, Code 1940. It (t) was reenacted by § 1(t) of Act No. 471, General Acts of 1943, p. 435. In this form the exemption provision again appears in Act No. 303, General Acts of 1947, p. 155, § 1(r). See again Act No. 211, § 1(r), Acts of 1949, p. 302. This exemption statute was repealed, effective October 1, 1959, by Act No. 100, Acts of 1959, p. 298, and by the same Act (No. 100) was reenacted and appears in § 33(h) of the Act. This § 33 of Act No. 100, supra, was amended November 6, 1959, by Act No. 371, Acts of Alabama, 1959, p. 962. In this amendatory Act No. 371, supra, the exemption provision again appears as § 33 (h). Again we find that Act No. 425, Acts of 1963, approved September 2, 1963, amends Act No. 100, supra, § 33, and the exemption provision (h) was again reenacted. See also Recompiled Code 1958, Title 51, § 786(34) (h).

During the years 1958–1960, the period covered by the assessment, the exemption provision here under consideration was (and is now) in the following language:

"The gross proceeds from the sale or sales of fuel and *supplies* for use or consumption aboard ships and towing vessels plying the high seas or gulf intracoastal waterway either in intercoastal trade between ports in the state of Alabama and ports in other states in the United States or its possessions

or in foreign commerce between ports in the state of Alabama and ports in foreign countries. Provided, however, that nothing in this article shall be construed to exempt or exclude from the measure of the tax herein levied the gross proceeds of sale or sales of material and *supplies* to any person for use in fulfilling a contract for the painting, repair, or reconditioning of vessels, barges, ships and other watercraft of fifty tons burden or less." (Emphasis supplied)

During these years appellee was engaged in operating steamships at sea for the transportation of goods and cargoes. In order to facilitate such carriage and to better assure the preservation and safety of these goods and cargoes appellee purchased in Mobile (its home port) certain items of tangibles as follows: (1) one-inch rough lumber of random widths and lengths; (2) dunnage paper; (3) shoring; (4) grain fittings.

Item 1 was used to "floor off" steel decking on the ship to protect the cargo against projections of steel. Dunnage paper was placed on the flooring. The cargo is thus secured and protected against sweating caused by contact with the steel. It also prevents the cargo from shifting.

Mr. W. T. Morris, Jr., District Manager of appellee, employed in the steamship business since 1946, appearing as a witness for appellee (and the only witness who testified in the hearing below), testified with reference to item 2:

"Dunnage paper is used in several capacities, primarily, * * * well, very often you use it to make a separation between two ports. For example you load bag cargo for LeHavre and then you are going to Rotterdam, and you make a separation with the dunnage paper to separate the ports, and it is used to protect bag goods primarily from touching metal projections in the holds of the vessels."

Item 3, in the words of the same witness, "is used to brace a feeder, or to brace fore and aft bulkheads on a ship and it is also used when you load heavy lifts, like large trucks or tractors, below deck on a vessel, or on deck of a vessel, a shoring, or large timber is placed around these vehicles and braced [sic] them so they won't move or shift."

With reference to item 4, this witness testified:

"Grain fittings,—I'm speaking of when you load bulk grain in a ship, grain has a tendency to float, so you put up a feeder, which is in the form of a funnel which funnels the grain into a hole and then you put up shifting boards that run fore and aft to prevent the grain from flowing."

This witness also testified that the dunnage paper (item 2) after its use is torn up and thrown away; that the normal practice for the lumber, once it has been used on a vessel, is to throw it overboard, or haul it away to a dump, as it is of no further use or value to anyone else. In ninety per cent of the cases, he testified, it is cheaper to stack it on deck and once at sea to throw it overboard. The lumber is rough. In some cases, he said, a small percentage of the lumber may be reconditioned and used again on the vessel, but generally after its use its economic value subserves only the "dump pickers."

The question presented before the trial court and here on this appeal is whether or not the dunnage (items 1, 2, 3 and 4) may be classified as supplies within the meaning and purview of the aforequoted exemption statute.

We are aware that in numerous decisions of this court we have consistently held that exemption statutes are most strongly construed against those asserting an exemption, and that exemptions from taxation are never presumed. They are strictly construed in favor of the taxing

power. State v. Wertheimer Bag Co. et al., 253 Ala. 124(2), 43 So.2d 824(2).

In the case of Waterman Steamship Corp. v. State, 271 Ala. 441(1, 2), 124 So.2d 65 (1, 2), this court observed as follows:

"The word 'supplies' as used in this statute we think clearly contemplates those items to be used or consumed aboard ship plying on the high seas. Indeed, these are the precise words of the statute. Vol. 40, Words and Phrases, p. 795, defines the word when used in the maritime field in the following manner:

" 'The word "supplies," as applied to a vessel, means those articles which a boat may find to be necessary for consumption and use on a voyage. Gibbons v. The C. J. Caffrey, 40 Mo. 257, 259.'

"And on page 796:

" ' * * * In its ordinary acceptation "supplies" are understood to mean those articles which a boat may find it necessary to purchase for consumption and use on the voyage. * * * Gibbons v. The Fanny Barker, 40 Mo. 253, 254; Bryan v. The Pride of the West, 12 Mo. 371, 374.' " (271 Ala. 443, 124 So.2d 67)

■ It is to be noted that the decision from which the aforequoted paragraph is taken was rendered on September 8, 1960. Thereafter, on September 2, 1963, Act No. 425, Acts of 1963, supra, the exemption statute here under consideration, was reenacted without any change. We held in Lindsey Lumber & Export Co. v. Deas, 230 Ala. 447(6), 161 So. 473(6), that where a statute has been reenacted without material change, construction given in a prior decision must be accepted as a part thereof. The aforequoted definition of "supplies" must now be accepted as a part of the exemption statute. Lindsey Lumber & Export Co. v. Deas, supra.

■ It is our opinion that the qualifying words, "for use or consumption," employed in the exemption statute, mean in part that the tangible items must be purchased for relatively temporary use on the designated ships; that their texture or composition makes them expendable under the types of temporary use on the ship to which they are put, or reasonably unfit after such temporary use for other profitable and practical purpose. These words do not include items suitable and purchased for permanent installation on the designated ships, or for prolonged and extended service thereon, even though they become expended after such installation or extended service.

■ We conclude from the evidence of Mr. Morris, who was the only witness to testify, that items 1, 2, 3 and 4 here under consideration were necessary supplies for use or consumption (as above defined) aboard appellee's ships plying the high seas in the manner specified in the exemption statute.

The decree of the trial court is due to be affirmed and it is so ordered.

The foregoing opinion was prepared by Bowen W. Simmons, Supernumerary Circuit Judge, and was adopted by the court as its opinion.

Affirmed.

LIVINGSTON, C. J., and LAWSON, GOODWYN and COLEMAN, JJ., concur.