CORN, et al. *v.* STATE

No. 43049          June 1, 1964          164 So. 2d 777

*Cornelius J. Ladner,* Bay St. Louis, for appellants.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

BRADY, TOM P., J.

The appellants were indicted, tried and convicted in the Circuit Court of Hancock County, Mississippi, for the possession of burglary tools and were each sentenced to serve four years in the state penitentiary. From this conviction and sentence, this appeal is prosecuted.

The record discloses that Latham Garriga, a municipal policeman and the deputy sheriff of Hancock County, Mississippi, was employed also as an employee of Porter's Garage, which is located near Bay St. Louis, in Hancock County. On January 5, 1963, when Garriga

was working at Porter's Garage and when he was not in uniform, the appellants drove to Porter's Garage in a 1958 Cadillac automobile. They offered to sell Garriga a brand new record player which was still in the case which they had, at a very cheap price. It is to be noted that the appellants drove to where Garriga was working at Porter's Garage, that they approached Garriga about purchasing the record player, and the record further shows that while he was talking with the appellants, who were trying to sell him the record player, that he saw in the back of the car on a quilt on the floor a sledgehammer to which a cold chisel had been welded, and another tool which could be used as a punch or a crowbar or a wedge. The record discloses that Garriga recognized these instruments as burglary tools. This recognition, coupled with the fact that the appellants wished to sell a new record player very cheap, convinced him that they had likely committed a felony. The record discloses also that the appellants were in a rough looking condition and that possibly they had been drinking. Not being in uniform and, as the record discloses, being unarmed, Garriga advised the appellants that he did not care to purchase the record player but that if they took the record player to the Phillips 66 Service Station located on Main Street out on Highway 90 from Bay St. Louis, probably they could sell the record player there. Garriga testified that he deliberately sent the appellants to the Phillips Service Station in order that he might call Deputy Sheriff Gerald Price, Jr., and Garriga did call Gerald Price, Jr., who immediately came to Porter's Garage in his automobile, where Garriga joined him, and together they drove to the Phillips 66 Service Station which is operated by one C. T. Jones. Upon arriving at the Phillips 66 Service Station, they found the Cadillac automobile into which $2 worth of gasoline was then being put. They learned also that the appellants had sold the record player to Jones for

the sum of $3 cash plus $2 worth of gasoline. Garriga borrowed Price's pistol, arrested the two appellants, forced them to stand outside the automobile with their hands thereon, and proceeded to search them. In the pocket of appellant Corn he found the earpiece of a walkie-talkie. The record player was obtained from Jones, and the appellants were taken to the county jail where they were incarcerated. They were indicted for the possession of burglary tools, tried and convicted. They were sentenced to four years each in the state penitentiary. From this conviction and sentence, this appeal, as aforesaid, is prosecuted.

There are but two errors assigned by the appellants, the first being that the trial court erred in permitting the introduction of any testimony given by the state against the appellants, which testimony and evidence was secured without a search warrant in violation of Sec. 23 of the Miss. Constitution of 1890; and second, that the court erred in overruling the motion of the appellants for a directed verdict in their favor after the state had rested its case. Insofar as this opinion is concerned, both assignments of error can be and are being considered simultaneously, since the second assignment of error rests largely, if not completely, upon the correctness of the first assignment of error.

Objections were duly made by the appellants to the introduction of any of the implements which were found in the Cadillac automobile being driven by the appellants. The trial court properly excluded all items except the crowbar, the earphone, the sledgehammer with the chisel welded upon it and, of course, the record player. First, considering whether or not these instruments were adaptations of tools or implements for breaking and entering, the record sufficiently shows that they were. Not only did officer Garriga and deputy sheriff Price testify that they were burglary tools and were instruments used by persons for breaking and

entering, but also officer Ford O'Neal, who had had eleven years experience in investigation of burglaries with the Identification Bureau of the Mississippi Highway Patrol, positively testified that the crowbar could be used for jimmying doors or for ripping safes and that the sledgehammer with the cold chisel welded to it was the type of instrument very frequently used in going through blocks, going into vaults, like in a schoolhouse, and also the end of the sledgehammer on which the chisel was welded was used for ripping safes; that this type of tool was commonly found in the possession of burglars.

This testimony on the part of the state is uncontradicted by the appellants. Possession of these tools was known to the appellants because they were lying on a quilt on the floorboard in the back of the car and were seen by them, though the appellant Godfrey denied any knowledge of the tools or the ownership thereof; nevertheless, the fact still remains that the jury could consider whether or not the appellants knew the tools were there and for what purpose the tools could be used since on the edge of the sledgehammer where the chisel was welded there were particles, or substance which was identified as resembling fireclay, a substance commonly used in insulating safes.

The sale of a record player which the record herein discloses to have a value of around $35, for $3 in cash and $2 worth of gasoline, does not of itself constitute sufficient proof to justify the assumption that the record player was stolen, under the ruling in Sartorious v. State, 24 Miss. 602, but in the case at bar there is this great disparity in the sale price of the new record player which, when coupled with the possession of the burglary tools adapted for breaking and entering and burglarizing, do constitute circumstances which are sufficient to awaken suspicion and to create a probable cause for arrest and therefore present sufficient evidence upon

which a jury could convict. There is, therefore, an analogy in the case at bar with the cases involving the receiving of stolen property. A general intent to use and employ the tools in the back of the car is also strengthened by the fact that appellant Corn had in his pocket the earphone of a walkie-talkie, which was shown in the record to be one of the modern instruments used by burglars in order to avoid detection when the act of burglary is being committed. The fact that this earphone was on the person of the appellant Corn when he was searched after being arrested is, in our opinion, sufficient to show the general intent to use or employ the burglary tools in breaking and entering by the appellants. The other eighteen or nineteen burglary items generally used by burglars in carrying out their unlawful acts were not admitted in evidence and properly were not considered by the jury. The proof here was sufficient to justify the arrest of the appellants. Ellison v. U. S., 206 F. 2d 476. The very Cadillac in which the appellants were driving was never claimed by J. L. Hearndon, to whom appellant Godfrey said the burglary tools belonged, the mysterious traveler who accompanied them from Atlanta to New Orleans and who then disappeared and who has yet failed to come and claim his automobile, can likewise be considered by the jury insofar as a general intent to use and employ the burglary tools is concerned. There is no merit in the contention by the appellants that a search warrant was necessary in order for the arrest to be made and for the items which were discovered by Garriga, lying on top of the quilt on the floor in the back of the car, when he was first approached by the appellants, prior to the time the car was searched and prior to the time the arrest was made. A search warrant was not needed for the earphone which was found upon the person of appellant Corn after the arrest was made.

We have repeatedly held that the eye cannot trespass and that there was no unlawful arrest of search and seizure when a misdemeanor was committed in the presence of the officer. In this instance, there is no necessity for the commission of a misdemeanor to permit the officer to see the burglary tools. It was at the instance of the appellants that the officer was contacted and was shown the record player and was asked to purchase the same, and it was at this time that the officer observed the burglary tools in the car being driven by the appellants. This rule is so well established that only a few citations are necessary. They are: Goode v. State, 158 Miss. 616, 131 So. 107 (1930); Bone v. State, 207 Miss. 868, 873-874, 43 So. 2d 571 (1949); Morgan v. Town of Heidelberg, 246 Miss. 481, 150 So. 2d 512; United States v. Long, 52 F. 2d 901. This case, as well as the cases just cited, is clearly distinguishable from Gause v. State, 203 Miss. 377, 34 So. 2d 729; One 1948 Pontiac Automobile v. State, 221 Miss. 352, 72 So. 2d 692 (1954); Smith v. State, 240 Miss. 738, 128 So. 2d 857 (1961); Brown v. State, 227 Miss. 823, 87 So. 2d 84 (1956). Although it was not necessary to prove that the record player in this case was stolen, nevertheless it is interesting to note that the niece from whom appellant Godfrey stated appellant Corn had received the record player was present in Bay St. Louis, visited them in the jail, and was in the courthouse, and yet she was not called upon to testify with reference to her having given the record player to her alleged uncle, appellant Corn.

We hold, therefore, that the proof was sufficient to justify the arrest of these appellants and, furthermore, it did not have to be sufficient to convict the appellants but it only had to rise to the degree of showing that the accused guilt was probable. We hold, therefore, that the arrest of appellants was a valid, legal one and that anything obtained as a result of the search of their persons subsequent to their arrest, such as the

earphone, was also admissible, because it is common knowledge that walkie-talkie radios are being used by modern burglars and the possession of an earphone is corroborative evidence sufficient to justify the jury in returning its verdict relating to the possession of burglary tools by the appellants. The jury was justified in disbelieving the testimony of Godfrey, a self-confessed dope addict with many convictions of narcotic violations in several states, as well as shoplifting. The jury had the opportunity of observing the appellants and hearing the testimony and observing the demeanor of all the witnesses. The jury concluded that the arresting officers did have probable cause to believe that the felony of possessing burglary tools had been committed by these appellants. Furthermore, the circumstances of the case are sufficient to indicate that the tools in appellants' possession, and which were properly admitted in evidence, were not only adapted and designed for breaking and entering, but were also possessed by the appellants with that knowledge and with the general intent to so use them.

The testimony of appellant Godfrey was to the effect that they had turned back from their trip to Texas and were coming back through Mississippi in order to "hit a few towns." He explained his statement, "We came over here to hit a few towns", by stating that that meant he was coming over to Mississippi in order to buy paregoric, which could be purchased in Mississippi, an ounce at a time, and which could not be purchased in Louisiana. The jury considered this explanation together with the fact that they had no money and very little gasoline in the car. It was for the jury to believe or disbelieve that story of whether or not the appellants had returned to Mississippi for some other reason, which is best explained by the presence of the burglary tools in the back of the car, on the face of one of which was found the protective fireclay.

■■ We disagree with the appellants' contention that they were entitled to a directed verdict in their favor after the state had rested. We think properly a question of fact was created as above outlined and that the jury was amply justified in finding the appellants guilty as it did.

There being no reversible error in this cause, it is therefore affirmed.

Affirmed.

*Kyle, P. J., and Ethridge, Gillespie and Patterson, JJ.,* concur.