186 So.2d 208 (1966)
Elbert WILSON
v.
STATE of Mississippi.
No. 43783.
Supreme Court of Mississippi.
May 2, 1966.
*209 Lester C. Franklin, Jr., Pascagoula, for appellant.
Joe T. Patterson, Atty. Gen., by G. Garland Lyell, Jr., Asst. Atty. Gen., Jackson, for appellee.
SMITH, Justice.
This is an appeal by Elbert Wilson from his conviction of burglary and larceny in the Circuit Court of Jackson County. He was indicted jointly with Carl Trehern and Robert Gold, but, upon his motion, a severance was granted and he was tried separately.
The essence of appellant's argument upon the one ground assigned for reversal on this appeal is that the evidence upon which he was convicted was inadmissible, having been obtained as the result of an unlawful search following his arrest without a warrant and without probable cause, in violation of the United States Constitution Amendments IV, V, and XIV, and Mississippi Constitution Article Three sections 14 and 23.
No other ground for reversal is assigned or argued.
The facts bearing upon the legality of the arrest and search may be summarized as follows.
Shortly after 10:00 P.M. on the night of February 25, 1965, Alec Judice, having heard a weather report that freezing weather was anticipated, went out with his flashlight to drain the radiator of his car. He was about 200 feet from Tanner's Supermarket and, in the lights which illuminated the front premises of that establishment, he observed a light colored Plymouth station wagon backed up to the front door. As he stood watching, some very heavy object was heaved into the back of the station wagon, "making a great racket" and causing the back end of the station wagon to go down and the front end to come up, "almost off the ground." Immediately afterward, four men (who had come apparently from Tanner's Supermarket) ran to the doors of the station wagon, jumped in and drove away. The whole length of this vehicle was visible to Judice as it made its departure. Judice went over and examined the door of Tanner's and found that it had been broken open. He did not have a phone, and there having been no convenient *210 pay telephone, he drove down to the sheriff's office and reported the occurrence which he had observed.
Among the officers who heard his report was Chief Deputy Sheriff Palmer who went out immediately to Tanner's and found that the front door had been forced and that a safe, containing money and valuables usually kept there and with which he happened to be familiar, was missing. He observed scratches and marks upon the waxed tile from the place where the safe usually stood, out the front door, as if it had been dragged out that way. Tanner confirmed the fact that the safe, containing money and valuables, had been stolen. The safe weighed between 500 and 600 pounds.
An official radio call went out to all local law enforcement units to the effect that there had been a safe burglary at Tanner's and giving a description of the vehicle and the other data as to its occupants, including the fact that one was wearing an unusually long coat.
Road blocks were established, all main highways were blocked and a saturated search was begun of all secondary roads.
Among the officers receiving the radio alert was Mississippi Highway Patrolman Simmons who was then on duty and patrolling U.S. Highway #90. At about 11:00 P.M., as he cruised along the highway, Patrolman Simmons noticed a light colored Plymouth station wagon parked at Tony's Pizza Place. He turned his patrol car around and went back. He saw three men come out of Tony's and get into the station wagon, but, as he drove up, all three got out again and went around and stood in front of it. Patrolman Simmons stopped and went inside of Tony's and asked the counterman how long the men had been there and was told, "about five minutes." He then went out and asked which of these men was driving the station wagon. Upon being told that appellant was the driver, he asked for and was shown his driver's license.
Patrolman Simmons testified:
"I asked him (appellant) to have a seat there in the cafe for a few minutes and I called the other two subjects in and talked to them and I asked them to sit there for a few minutes, that I had a deputy sheriff I would like for them to talk to for a few minutes. I was going to call him around there and let him check them out. That we'd had a little something to happen and we wanted to check them out there."
Patrolman Simmons testified further that he did not arrest appellant or his companions, and that they were arrested later by Deputy Sheriff Palmer. He said, "I asked them if they would mind remaining there until I had a deputy talk to them and they said certainly they wouldn't mind staying."
In making this request, Patrolman Simmons did not overstep the bounds of proper investigatory procedure and his action did not amount to an arrest. United States ex rel. Alexander v. Fay, 237 F. Supp. 142 (S.D.N.Y. 1965).
Patrolman Simmons then went out to his car and by his radio telephone apprised Deputy Sheriff Palmer of the situation.
Palmer, who had previously conferred with Judice and Tanner and had made his examination of the premises at Tanner's, arrived in a few moments. At this point, Palmer was in possession of information that Tanner's had been burglarized and that the safe had been stolen. He knew the color which the safe had been painted, and he was familiar with the marks that it had made on the floor when it was dragged out the front door at Tanner's. He had information in his possession that a very heavy object had been loaded into the back of a light colored Plymouth station wagon and had been carried away by four men about an hour earlier.
*211 Deputy Sheriff Palmer testified that, when he arrived at Tony's, he found Highway Patrolman Simmons and three men, including appellant, waiting there for his arrival. One of the men had on an unusually long coat such as that described by Judice.
Palmer said that the station wagon was a "completely glass-surrounded type of station wagon" and he observed through the glass "a gash or a smear extending all the way from the rear where the back door of the station wagon drops down, all the way from that to the metal backing of the front seat and at the point where it met the front seat, the metal was freshly torn or cut completely through from the back of the front seat as if it had been hit by a sharp corner."
He stated that he observed in the station wagon, looking through the glass and without going into it, particles of paint which appeared to have rubbed off of the object as it made the marks or gashes which he described.
It was neither a trespass nor an unlawful search, nor was it illegal for Palmer to look into the station wagon through the windows or to observe and consider these marks and other indicia that the safe had been transported in the station wagon.
The eye cannot commit a trespass, and information or evidence obtained merely by looking, without a trespass, is competent. Corn v. State, 250 Miss. 157, 164 So.2d 777 (1964); Morgan v. Town of Heidelberg, 246 Miss. 481, 150 So.2d 512 (1963); Bone v. State, 207 Miss. 868, 43 So.2d 571 (1949); Goode v. State, 158 Miss. 616, 131 So. 106 (1930); and, United States v. Long, 52 F.2d 901 (3d Cir.1931).
It was at this point that appellant and his companions were arrested by Palmer.
When Palmer made the arrest, sometime after 11:00 P.M., he knew that the burglary had been committed at Tanner's, about two miles distant, shortly after 10:00 P.M. He knew this from his own personal investigation and observations at Tanner's, as well as from information supplied by Judice and Tanner. He was in possession of information from Judice warranting the conclusion that the safe was carried away by several men in a light colored Plymouth station wagon. Tanner had confirmed to him that the safe, containing money and valuables, had been stolen, but Palmer was familiar with the customary location of the safe and knew that it was gone. He also observed personally the clear marks made by the moving of the safe, which led from that location out the front door. He knew the color of the safe. When Patrolman Simmons called Palmer, it was in the course of his investigation of the crime, pursuant to an official radio alert. Appellant and his companions were not placed under arrest by Simmons, nor restrained in any way. It is true that they acceded to his request to wait until he could have a representative of the sheriff's office talk to them, but they did this willingly and voluntarily.
When Palmer arrived at Tony's, he knew that the felony had been committed.
The result of his own personal investigation, together with all of the information he then had as to the automobile, its occupants, the safe, and his observations through the windows of the station wagon of the marks and paint particles, constituted sufficient probable cause to believe that appellant and his companions had committed the felony and to warrant their arrest. Clanton v. State, 242 Miss. 734, 137 So.2d 180 (1962); Millette v. State, 167 Miss. 172, 148 So. 788 (1933); and, Watson v. State, 166 Miss. 194, 146 So. 122 (1933).
There having been probable cause for the arrest, the evidence obtained was admissible. This evidence was virtually *212 without dispute and overwhelmingly established appellant's guilt. The case is therefore affirmed.
Affirmed.
ETHRIDGE, C.J., and BRADY, PATTERSON and ROBERTSON, JJ., concur.