300 So.2d 774 (1974)
Harvey R. HOWELL
v.
STATE of Mississippi.
No. 47752.
Supreme Court of Mississippi.
March 25, 1974.
Rehearing Denied September 30, 1974.
*775 Alfred Lee Felder, Pascagoula, for appellant.
A.F. Summer, Atty. Gen., by John C. Underwood, Jr., Special Asst. Atty. Gen., Jackson, for appellee.
ROBERTSON, Justice:
Harvey Ray Howell was indicted, tried and convicted in the Circuit Court of Jackson County for the unlawful possession of amphetamines. He was sentenced to serve a term of two years in the Mississippi State Penitentiary.
The only assignment of error was that the trial court erred in overruling defendant's motion to suppress the evidence.
Deputy Sheriff Alexander was on patrol at 2:25 A.M. on August 7, 1972, when he noticed a white van parked in front of Sherman's Grocery in Escatawpa. Alexander noticed that the driver was slumped over the steering wheel. He investigated and roused the driver sufficiently to get him out of the van. Howell appeared to be drunk or under the influence of drugs, so Alexander assisted him to his patrol car and put him on the back seat.
In getting Howell out of the van, Alexander noticed a pistol in a holster on the right front floorboard of the van. He went back to pick up the pistol and, when he opened the front door on the passenger's side, he noticed in a shallow offset in the dashboard two cellophane bags containing white tablets. Alexander turned these over to the narcotics officer, who, on analysis, found these small white pills to be amphetamines.
Howell contends that inasmuch as deputy sheriff Alexander did not have an arrest warrant or a search warrant he had no right to retrieve the pistol and take the two cellophane bags into his possession, and have the contents analyzed.
We are of the opinion that the trial court was correct in overruling appellant's motion to suppress, and that Alexander's action, under the circumstances of this case, did not amount to an unreasonable search and seizure. Finding Howell slumped over the steering wheel of the van at 2:25 A.M. was enough to require an investigation to determine the cause. Howell could have been sick or injured, could have suffered a heart attack; he could have been drunk or under the influence of drugs; or he could have been engaged in criminal activity. It was the sheriff's duty to keep an incapacitated person from driving a car on a public road and endangering the lives of others. So it was reasonable for Alexander to place him in the patrol car where he could not hurt himself or others.
Having noticed the pistol on the right front floorboard, it was reasonable for Alexander to retrieve the pistol if for no other reason than to keep it from being stolen while the van was unattended. When Alexander noticed the two cellophane bags in the open recess next to the glove compartment, he acted reasonably in taking these bags together with their contents into his possession.
This Court has consistently held that the "eye cannot trespass". Wilson v. State, 186 So.2d 208 (1966); Powell v. State, 184 So.2d 866 (Miss. 1966); Corn v. State, 250 Miss. 157, 164 So.2d 777 (1964); Bone v. State, 207 Miss. 868, 43 So.2d 571 (1949).
The United States Supreme Court stated the "plain view" doctrine in Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968):
"It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." 390 U.S. at 236, 88 S.Ct. at 993.
Having reached the conclusion that deputy sheriff Alexander had "a right to be in the position to have that view" when he noticed the two cellophane bags, the two *776 bags with their contents were subject to seizure, and could be introduced into evidence when found to contain amphetamines.
The conviction, therefore, is affirmed.
We do think that the two-year sentence is excessive in view of Mississippi Code 1972 Annotated, Section 41-29-139(d)(3) (1973 Supp.), which provides:
"A controlled substance classified in Schedules III, IV or V as set out in sections 41-29-117 to XX-XX-XXX, upon conviction may be confined for not more than one (1) year, or fined not more than one thousand dollars ($1000.00), or both." (Emphasis added).
Even though the conviction is affirmed, we must set aside the sentence, and remand for resentencing in accord with the statute.
Conviction affirmed, but sentence set aside, and case remanded for resentencing.
GILLESPIE, C.J., and SUGG, WALKER and BROOM, JJ., concur.

ON PETITIONS FOR REHEARING
On a former day we affirmed Howell's conviction for possession of amphetamines, but remanded the case for resentencing because the two year sentence imposed was in excess of that permitted by statute.
Both Howell and the State filed petitions for rehearing in this case. Howell contends that this Court erroneously applied the "plain-view" doctrine by holding that certain police action did not amount to an unreasonable search and seizure. The State's petition for rehearing alleges that the remand for resentencing was erroneous because the State Board of Health, pursuant to statutory authorization, transferred all amphetamines from Schedule III to Schedule II of the Uniform Controlled Substances Law[1] on October 13, 1971. The State argues that since the maximum penalty for Schedule II substances is confinement for not more than three years, the lower court's sentence was not excessive.
After the petitions for rehearing were filed, we requested additional briefs on the following questions:
Miss. Code Ann. § 41-29-111 (1972) authorizes the State Board of Health to add substances to, delete, or reschedule any substances set forth in § 41-29-113 to XX-XX-XXX. Is this delegation of legislative authority constitutional when the State Board of Health, by rescheduling substances, increases or diminishes the punishment with reference to such substances?
Assuming that the statute is constitutional, would the notice given by the State Board of Health constitute due process?
Mississippi Code Annotated section 41-29-111 (1972) provides, in part, as follows:
The board shall work in conjunction and cooperation with the state board of pharmacy, the district and county attorneys, the office of the attorney general and the Mississippi Highway Safety Patrol. The board shall administer this article and may add substances to or delete or reschedule any or all substances enumerated in the listed schedules as set out in sections 41-29-1113 to XX-XX-XXX.
......
(d) If any substance is designated, rescheduled, or deleted as a controlled substance under federal law and notice thereof is given to the board, the state board of pharmacy shall control the substance under this article after the expiration of thirty days from publication in the Federal Register of a final order designating a substance as a controlled *777 substance or rescheduling or deleting a substance, unless within that thirty-day period, the Mississippi Bureau of Drug Enforcement or the state board of pharmacy or the state board of health object to inclusion, rescheduling, or deletion. In that case, the objecting agency shall publish the reasons for objection and afford all interested parties an opportunity to be heard. At the conclusion of the hearing, the board shall publish its decision, which shall be final unless altered by statute. All such controlled substances designated, rescheduled, or deleted under federal law and which become final as herein provided shall be published and immediately distributed to all persons and agencies entitled under the law of this state to be provided with a copy of the Mississippi Code and to all licensed attorneys in this state and to such other persons, firms and corporations as the board may deem appropriate.
This section of the Mississippi Uniform Controlled Substances Law is similar to title 21 section 811, U.S.C. (1970), one of the differences being that the authority to reschedule substances in the federal statute is vested in the Attorney General of the United States, whereas the Mississippi act vests this authority in the State Board of Health.
In United States v. Jones, 480 F.2d 954 (5th Cir.1973), the statute was attacked as being unconstitutionally vague. The Court stated:
The short answer to this contention is that Congress itself put marijuana in its current classification and thus the substance has never been administratively reclassified... . (480 F.2d at 960).
In United States v. Westlake, 480 F.2d 1225 (5th Cir.1973), the statute was attacked on the ground that it represented an impermissible delegation of legislative power. With reference to this contention, the Court stated:
We decline to reach this point at the present time. Congress initially classified cocaine as a Schedule II Controlled Substance, and the Attorney General has neither rescheduled nor deleted cocaine from the list of controlled substances since the effective date of the statute. Appellant therefore has not been affected by whatever delegation of authority may be embodied in the statute. (480 F.2d at 1226).
Unlike Jones and Westlake, the question is squarely before this Court because Howell's sentence was increased as a result of the action of the State Board of Health in transferring amphetamines from Schedule III to Schedule II. Since the validity of Section 41-29-111 has been questioned, we must determine if this act of the legislature is authorized by the Mississippi Constitution of 1890 because if it is not authorized by the Constitution, it will be void.
Article 1, Section 1, divides the powers of the government of the State of Mississippi into three distinct departments, each of which is confided to a separate magistry. Section 2 of the Article prohibits any person or collection of persons of one of the departments from exercising any power belonging to the other departments. Section 5 of Article 3 declares that all government of right originates with the people, is founded upon their will only, is instituted for the good of the whole and all political power is vested in and derived from the people. By Section 6 the people of Mississippi reserved to themselves the exclusive right to regulate internal government and to alter and abolish the Constitution and form of government whenever they deem it necessary to their safety and happiness, provided such change is not repugnant to the Constitution of the United States.
Article 4, Section 33, vests all legislative power in the legislature, the elected representatives of the people. The question of the delegation of legislative authority was *778 considered in Alcorn v. Hamer, 38 Miss. 652 (1860) under similar provisions in the Constitution of 1832. The Court stated:
According to the theory of the government of Mississippi, indeed according to the principles which are universally regarded as fundamental in all the American systems of government, all political power is inherent in the people; and all free government is founded on their authority, and established for their benefits. And hence, that they have an inalienable and indefeasible right to abolish their form of government, or to alter it in such manner as they may deem most conducive to their welfare. Bill of Rights, § 2.
They have, therefore, the undoubted right to delegate as much or as little of this inherent political power as they see proper; and to vest it in such agents or departments of government as they shall choose to designate. The sovereign power of this State, or the people in their national or sovereign capacity, have ordained a Constitution, and by it have established a government, and clothed it with all the powers which it possesses. It, is, therefore, to the Constitution that we must look, for the manner in which they are to be exercised, as well as for the nature and extent of its delegated powers. And hence, in all cases in which the acts of any department of government are brought in question, it must be shown that those acts are authorized by it, or they will be void.
The legislative, judicial, and executive powers of the government of this State are vested in separate and distinct departments. And each department is prohibited from the exercise of powers pertaining to the others. The legislative power of the State is vested in two distinct departments: the one styled "the Senate," the other "the House of Representatives;" and both together, "the legislature of the State of Mississippi." Const. Art. 2, § 4. The grant to this department is in general terms. It vests it with the whole of the legislative powers of the State. No attempt is made in the Constitution to define the term "legislative power;" and, unlike the Constitution of the United States, it makes no attempt at a specific enumeration of the items of legislative power.
......
The legislative power, to whatever subjects it may be applied, and whatever may be its extent, is vested exclusively in the Senate and House of Representatives, by the people, in whom it resides. They have, by the highest and most solemn of compacts, the Constitution, voluntarily relinquished their right to exercise it. It can only be reclaimed by an abolition, or an amendment of the Constitution, and the people are the only power competent to do either. To allow the legislature to associate with them in the exercise of the legislative function another tribunal, or to cast back upon the people their delegated powers, would be tantamount to a subversion of the Constitution, by changing the distribution of the powers of the government, without the consent of the authority by which it was ordained. The proposition, that the legislature can surrender any portion of the authority with which it is vested, or authorize its exercise by any other body, or by the whole people of the State, is alike repugnant to the spirit and positive provisions of the Constitution. It is opposed to the express provisions of the Constitution, for the delegation of the legislative power to the Senate and House of Representatives, is declared to be exclusive of the other departments, and is necessarily exclusive of every other person or body. It is opposed to the spirit of the Constitution, which is intended for the equal protection of every party to the social compact, who is entitled to demand under its auspices, "that his rights shall be protected, and that his civil conduct shall only be regulated by the associated wisdom, intelligence, and *779 integrity of the whole representation of the State." And the inability of the legislature to delegate its powers, independent of these considerations, would arise from the principles which apply to every delegation of power requiring rectitude, discretion, and knowledge. Indeed, the proposition that the legislative power is incapable of being delegated by the department in which it has been deposited, either to the whole people or to any portion of them, is not denied by any one, and seems so clear that these observations might well have been dispensed with. (38 Miss. at 747, 748, 749 and 750). (Emphasis supplied).
It is quite obvious that in 1860 this Court did not contemplate that any delegation of legislative authority was permissible under the Constitution. However, as life and legislation became more complex there was engrafted onto the Alcorn doctrine certain exceptions designed to permit, within strict limits, the delegation of legislative authority to administrative agencies. We have consistently held, however, that an administrative agency cannot be vested with an arbitrary and uncontrolled discretion. State v. Allstate Insurance Co., 231 Miss. 869, 97 So.2d 372 (1957). A recent statement of the rule concerning delegation of legislative authority is found in Columbia Gulf Transmission Co. v. Barr, 194 So.2d 890 (Miss. 1967). In that case we stated:
In one of the landmark cases involving this question, the Supreme Court of the United States said in Field v. Clark, 143 U.S. 649, 694, 12 S.Ct. 495, 505, 36 L.Ed. 294, 310 (1892), that:
The legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend which cannot be known to the lawmaking power, and must therefore be a subject of inquiry and determination outside of the halls of legislation.
This rule was quoted and approved by this Court in New Orleans, M. & C.R.R. v. State, 110 Miss. 290, 70 So. 355 (1915), wherein this Court upheld a statute delegating the authority to the Railroad Commission to classify railroads according to gross income for the purpose of fixing a privilege tax. Since that time the foregoing statement has been approved and adopted by other cases decided by this Court. (194 So.2d at 895).
The State argues that the legislative grant of authority in Section 41-29-111 is proper since the State Board of Health is only given fact-finding authority to classify dangerous substances and is provided with guidelines for making its determinations. Section 41-29-111 provides specific guidelines to be used by the Board in determining whether or not a substance should be controlled and Sections 41-29-113 to XX-XX-XXX, inclusive, provide additional standards to be followed by the Board in assigning a substance to one of the five schedules. The question of whether or not the grant of authority to the State Board of Health is valid arises because, under the Uniform Controlled Substances Law, the penalties prescribed for violations thereof are inextricably tied to the various schedules. For example, the maximum penalty for the possession of a Schedule III substance is one year in prison or $1,000 fine, or both; the maximum penalty for possession of a Schedule II substance is three years in prison or $3,000 fine, or both.
It is readily apparent that when the State Board of Health shifted amphetamines from Schedule III to Schedule II, the maximum penalty for possession thereof increased. The practical effect of moving a substance from one schedule and placing it in another is to increase or diminish the criminal penalty for violation of *780 the act. It is likewise true that, if substances are added to or deleted from any of the schedules such action makes acts pertaining to the substances so added a crime, and as to substances deleted, abolishes a crime. The result is that the State Board of Health is given the authority to define a crime, and ordain its punishment.
The exclusive authority of the legislature to define crimes and fix the punishment therefor is without question. The United States Supreme Court in United States v. Wiltberger, 5 Wheat. (U.S.) 76, 5 L.Ed. 37 (1820) laid down the principle that the power to define a crime and the power of punishment was vested in the legislative and not in the judicial department. Speaking through Chief Justice Marshall, the Court stated:
The rule that penal laws are to be construed strictly, is perhaps not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals; and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department. It is the legislature, not the court, which is to define a crime, and ordain its punishment. (5 Wheat. (U.S.) at 95, 5 L.Ed. at 42).
This Court held in Arnold v. State, 213 Miss. 667, 57 So.2d 484 (1952) that the power of the legislature to fix punishment for crimes was an unquestioned constitutional power.
In Broadhead v. Tax Commission, 238 Miss. 239, 117 So.2d 881 (1960), this Court had under consideration the constitutionality of Section 9220-24, Mississippi Code Annotated (1942) Recompiled which authorized the Commissioner of the State Tax Commission to impose a penalty for a delinquent income tax return of not less than 10% nor more than 25% of the delinquent sum. The Court held that the power to prescribe penalties to be incurred for breaches of public duty belongs to the legislative department. It further held that determination of the amount of penalty to be imposed for noncompliance with a requirement of law is a legislative function which may not be delegated to an administrative officer with unrestricted power to impose such penalties, within broad limits, as he may see fit to impose. The Court held this statute unconstitutional on the ground that the legislature had no power to surrender its own discretion to an administrative officer in the matter of determining the amount of a penalty to be imposed for delinquencies under the revenue law. The Court recognized an exception in the case in the following language:
There is only one recognized exception to the principle laid down in the cases which we have cited, that the power conferred upon the Legislature to make laws cannot be delegated to any other body or authority, and that is the exception relating to the delegation by the general lawmaking body of extensive lawmaking powers with reference to local matters to municipalities, or other subordinate local governmental authorities, for the purpose of local self-government. It is well-settled that the delegation by a state legislature to a municipal corporation of the power to legislate, subject to the paramount law, concerning local affairs, does not violate the inhibition against the delegation of the legislative function. See Annotation: 79 L.Ed. 491, 492, and cases cited. See also Cooley's Constitutional Limitations, Eighth Ed. Vol. 1, Ch. 5, p. 235, and Willoughby on the Constitution of the United States, Vol. 3, 2nd Ed., 1636. As stated by the Supreme Court in Stoutenburgh v. Hennick, 1889, 129 U.S. 141, 9 S.Ct. 256, 257, 32 L.Ed. 637, "It is a cardinal principle of our system of government that local affairs shall be managed by local authorities, and general affairs by the central authority; and hence, while the rule is also fundamental that the power to make laws cannot be delegated, the creation of municipalities exercising local self-government has never been held to trench upon that rule." (238 Miss. at 268-269; 117 So.2d at 894-895).
*781 In Dendy v. Wilson, 142 Tex. 460, 179 S.W.2d 269 (1944) the Texas Supreme Court held that the power to define crimes and the punishment therefor was vested by the constitution in the legislature.
In Grimes v. Greer, 223 Ga. 628, 157 S.E.2d 260 (1967), the Supreme Court of Georgia held that the power to prescribe penalties to be imposed for the commission of crime rests with the legislature and is part of the sovereign power of the state to maintain social order.
In State v. Sutton, 21 Ariz. App. 271, 518 P.2d 590 (1974) Division 1, Court of Appeals of Arizona stated:
The legislature, in whose province is vested the right to legislate criminal penalties, has mandated that the maximum possible sentence that defendant could receive for the crime of which he was convicted was two and one-half years. In our opinion, neither the executive branch of our government through its law enforcement agencies or penal institutions, nor the judicial branch of government through its courts can thwart this legislative prerogative by extending the statutory limits. In this regard, from the defendant's standpoint, there is no distinction on the infringement of his freedoms between presentence incarceration and post-sentence incarceration. They both classify as jail time  punishment. Thus, to allow the executive or judicial branch of government to punish the defendant in excess of that which the legislature has allowed infringes upon the separation of powers of government and is prohibited. (21 Ariz. App. at 273, 518 P.2d at 592).
The rule is stated in 21 Am.Jur.2d Criminal Law § 577 (1965) as follows:
The power to prescribe the penalty to be imposed for commission of a crime rests with the legislature, not with the courts. This power is not a special grant or limited authority; it is part of the sovereign power of the state to maintain social order and to take life and liberty and the rights of both when necessary.
The power of a legislative body with respect to punishment for crime is practically unlimited, and is controlled only by constitutional provisions. Subject to this qualification, the legislature may fix the punishment for crime as it sees fit, and where a particular punishment is prescribed, no other may be imposed. (21 Am.Jur.2d at 542).
We hold that the authority to define crimes and fix the punishment therefor is vested exclusively in the legislature, and it may not delegate that power either expressly or by implication, but must exercise it under Article 4, Section 33 of the Constitution. We further hold that the attempted delegation of power to the State Board of Health is contrary to Article 1, Sections 1 and 2 of the Constitution providing for separation of the powers of the government of the state into three departments. The State Board of Health is an administrative agency and as such is a part of the executive department of the state. When it rescheduled amphetamines from Schedule III to Schedule II, it increased the punishment of Howell in excess of that fixed by the legislature and thereby exercised legislative power. This infringes on the separation of the powers of government and is prohibited.
We therefore hold that the portions of Mississippi Code Annotated section 41-29-111 (1972) quoted in this opinion are unconstitutional, but are separable from the remaining provisions of the Uniform Controlled Substances Law. The constitutionality of the remaining provisions thereof are not affected by this decision under the rule that a statute may be valid in part, and the invalid part may be disregarded, where the two parts are not so intimately connected as to raise the presumption that the legislature would not have enacted the one without the other. American Express Co. v. Beer, 107 Miss. *782 528, 65 So. 575 (1914); Campbell v. Mississippi Union Bank, 7 Miss. 625 (1842); The General Tompkins, 9 F. 620 (C.C.S.D.Miss. 1881).
In view of the result here reached, it will be of no effect for the State Board of Health to revise and republish the schedules as provided in Mississippi Code Annotated section 41-29-123 (1972). We do not reach the question of whether the notice given by the State Board of Health constituted due process because the decision on the constitutional question involved renders it unnecessary.
The State's petition for rehearing is denied and the maximum amount of time one may be confined for possession of amphetamines remains one year as prescribed by statute. We have carefully considered the defendant's petition for rehearing and find it is without merit; therefore, it is denied.
Petitions for rehearing denied.
All Justices concur.
NOTES
[1] Under the Uniform Controlled Substances Law, substances are classified in five schedules. Mississippi Code Annotated sections 41-29-113 to XX-XX-XXX (1972).