STATE of Iowa, Appellee,

v.

James KERSH, Appellant.

No. 66180.

Supreme Court of Iowa.

Dec. 23, 1981.

Francis C. Hoyt, Jr., State Appellate Defender, and Douglas F. Staskal, Asst. State Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., John P. Messina, Asst. Atty. Gen., and Steven S. Hoth, Des Moines County Atty., for appellee.

Considered by LeGRAND, P. J., and UHLENHOPP, HARRIS, ALLBEE, and LARSON, JJ.

UHLENHOPP, Justice.

In this appeal ·we pass upon the validity of the seizure of a pistol from defendant James Kersh, in a prosecution for carrying a concealed weapon under section 724.4, The Code 1979.

The principal witness for the State was Burlington Police Officer Ron Holtkamp. He testified at the suppression hearing not long after the seizure and again at defendant's trial about seven months later. At the trial he could not remember his suppression hearing testimony, which was more favorable to defendant's position than that given at trial. We believe the suppression testimony is more accurate and will base the decision on it.

Holtkamp testified in material part at the suppression hearing:

A. We had a call from dispatcher to go to the three hundred block of Ordinance; call came in from the complainant; were advised on the radio that a subject they believed intoxicated had backed the car off the street up into a lawn at Three Forty-Six Ordinance.

. . . .

A. Three Forty-Six Ordinance was checked afterwards; there was no lights on; it was vacant.

. . . .

A. The car was backed into the—right in front of the unit in between the street and the unit.

Q. Okay, and the front of the car would have been closest to the street? A. Yes.

Q. Paved portion of the street? A. Yes, if not right on the edge of the—like the bumper would be overhanging the edge; if there had been a sidewalk, it would have been well over the sidewalk; bumper possibly would have been on the street.

Q. Bumper was on the street; he would have been sitting approximately where the sidewalk would have been? A. Yes.

Q. Was it in the street right-of-way? A. Yes.

Q. What did you do then or what did you observe then after arriving at this area? A. I went up to the car; it was a yellow Buick; the parking lights were on. I could see the subject slumped behind the wheel; motor wasn't running.

. . . .

Q. And? A. Went up to the car; observed the subject wasn't moving; tapped on the window; there was no response there. When I opened the car door on the driver's side, still no response; and I carefully, well, checked the subject. . . . I carefully shook the subject to awaken him. I'm kind of kinky of wakening a subject up. You never know what you're going to come up on. The subject was aroused after some effort, and during this time I noticed a strong smell of alcohol in the car, and the sub-ject, when he woke up, his speech was slurred and gave every indication that he was drunk. He was—when asked to exit from the car, he was very unsteady. The questions I asked him, what he was doing there, he said he was waiting for somebody. And I asked him where he was at and he said West Burlington.

Q. He said he was in West Burlington? A. Yes; he said he was in West Burlington.

Q. In actuality, he was in the City of Burlington? A. Yes; right. And then I had him place his hands up on the car and arrested him for public intoxication. And I started to pat him down before I put the cuffs on him and in his righthand jacket pocket I first—I noticed something hard there. I went inside the jacket and found a Titan twenty-five automatic pistol.

. . . .

Q. Were there any rounds in the ammunition in the pistol? A. Yes; the gun was in a very unsafe condition. It had a live round in the chamber, a full clip. This was a cheap pistol; the safety was on. I've owned one of these pistols myself six or seven years ago and it is very unstable.

Q. What caliber? A. Twenty-five caliber.

Q. Did you thereupon arrest him for a concealed weapon charge as well? A. Yes. I asked him if he had a permit to carry this first, and he said he did not.

. . . .

Q. And do vehicles customarily park on the yard, as you referred to it, area in this area of the manor? A. This yard area is kind of a common area; people walk through it; they park in it; they— It's open; it's wide open to the public.

. . . .

Q. Just so I'm clear, I believe on direct examination and, correct me if I'm wrong, you opened the door to the vehicle as opposed to Mr. Kersh opening the door? A. Yes; I opened the door. I had to wake him up.

Q. At that time he was still unconscious or sleeping? A. Yes.

Q. And did you try tapping on the window? A. That's right.

Q. At what point in time did you notice this aroma of alcohol? A. As soon as the door was opened, entry of the car.

The Court: I can't understand. Officer, you told Mr. Shortenhaus that the car was parked with at least the bumper parked in the street; now you're telling Mr. Linn it was legally parked or what are you saying? A. What I'm saying is that on that, no tickets would be issued. I don't think anyone would issue tickets in that situation unless it was far enough out in the street that it would be a hazard. People kind of park helter-skelter out there because there is quite a few areas to park; somebody driving by there, the bumper is out, some of them are; there wouldn't be any real problem with it; it wouldn't be a hazard.

. . . .

Q. Okay, and I believe your testimony is this is a public area: A. Yes, very definitely.

Q. Where the defendant's car was parked? A. Yes.

Prior to trial defendant moved to suppress evidence of the pistol on the ground of illegal search and seizure. After a hearing, the trial court overruled the motion. Defendant likewise objected at trial to evidence of the gun, and the court again overruled the objections. Defendant was convicted and sentenced to sixty days confinement, and appealed.

On appeal defendant asserts that Holtkamp's search of defendant's person and consequent discovery of the pistol resulted from a prior seizure of his person or a prior search of his car or an arrest, all without probable cause.

█ I. The search of defendant's person and seizure of the pistol was without a warrant and was therefore unconstitutional unless it fell within one of the carefully prescribed exceptions. *State v. Schrier*, 283 N.W.2d 338 (Iowa 1979). The present facts bring the case within two exceptions. One has to do with the situation described thus in 2 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 7.4(f), at 587 (1978):

> If the police find a person unconscious or disoriented and incoherent in a vehicle, it is reasonable for them to enter the vehicle for the purpose of giving aid to the person in distress and of finding information bearing upon the cause of his condition.

Illustrations of that exception are *United States v. Haley*, 581 F.2d 723, 725–26 (8th Cir.), *cert. denied*, 439 U.S. 1005, 99 S.Ct. 618, 58 L.Ed.2d 681 (1978); *Vauss v. United States*, 370 F.2d 250, 252 (D.C.Cir.1966) (*per curiam*); *United States v. Barone*, 330 F.2d 543, 545 (2nd Cir.), *cert. denied*, 377 U.S. 1004, 84 S.Ct. 1940, 12 L.Ed.2d 1053 (1964); *Anchorage v. Cook*, 598 P.2d 939, 942 (Alaska 1979); *Guardiola v. State*, 268 Ind. 404, 413–14, 375 N.E.2d 1105, 1110–11 (1978); *Howell v. State*, 300 So.2d 774, 775 (Miss. 1974). *See also Mincey v. Arizona*, 437 U.S. 385, 392, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290, 300 (1978).

Defendant did not respond to Holtkamp's knocks on the window. Suppose defendant had been the victim of a heart attack and Holtkamp had simply driven off. Under defendant's argument, Holtkamp would be placed in a "no-win" situation.

█ Holtkamp justifiably opened the car door and checked defendant's condition. When he did so he discovered defendant was intoxicated. He could then legally arrest defendant for public intoxication and search him incident to the arrest. *State v. Harty*, 167 N.W.2d 665 (Iowa 1969). Intoxication in a public place constitutes a misdemeanor. § 123.46, The Code. A "public place" is "any place, building, or conveyance to which the public has or is permitted access." § 123.3(23). The evidence shows that defendant was sitting in his car in a place to which the public was permitted access.

█ II. While the first exception is enough to uphold the trial court's ruling, we also think Holtkamp acted reasonably in checking defendant's state of sobriety in view of the report which came to the police

that a subject believed to be intoxicated had backed a car off the street and up into a lawn. This report would not be enough, standing alone, to justify a search. *Whiteley v. Warden of Wyoming Penitentiary*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). But the report does not stand alone. When Holtkamp arrived at the scene he found the car parked as it was, and inside it he saw defendant slumped in the seat. Defendant did not respond to knocks on the window. Was defendant asleep or intoxicated? These are the circumstances which distinguish the case from *Whiteley.* See 401 U.S. at 568, 91 S.Ct. at 1037, 28 L.Ed.2d at 313 ("The arresting officer was not himself possessed of any factual data tending to corroborate the informer's tip that Daley and Whitely committed the crime."). *See also State v. Richards,* 110 Ariz. 290, 518 P.2d 113 (1974).

Evidently, from the report, a member of the public had seen defendant drive. Apart from the report, Holtkamp did not have information about that fact. The other element of the crime of driving while intoxi-cated, which Holtkamp needed to consider, was the question of defendant's intoxication; a conviction of driving while intoxicated could not stand without that proof. With defendant slumped in the seat directly before him, we think Holtkamp is to be commended rather than criticized for checking on defendant's state of sobriety. When he did so, he discovered that defendant was intoxicated, and he so charged defendant. Whether defendant was also charged with driving while intoxicated and if not, why not, we do not know. In any event, the police should not be condemned because they investigate reports in a diligent and reasonable manner.

We uphold the judgment and sentence.

AFFIRMED.