OPINION
The State of Ohio appeals from the decision of the Montgomery County Common Pleas Court suppressing crack cocaine found during the arrest of Albert Rainey for public intoxication.
On February 27, 1999, Albert Jake Rainey was arrested for public intoxication and a search incident to arrest revealed crack cocaine on his person. On March 8, 1999, defendant was charged under indictment with one count of possession of crack cocaine. Defendant moved to suppress the evidence, and hearing was held on July 7, 1999, where defendant argued that no probable cause existed for the officers to place him under arrest for public intoxication. The trial court sustained defendant's motion and suppressed the evidence. The State timely appealed pursuant to Crim. R. 12(J) and R.C. 2945.07(A).
On February 27, 1999, defendant left work shortly after 9:00 p.m. to catch the bus, but missed it because it was apparently running early. (Tr. 27). Martin Amell, a co-worker, offered him a ride home, but informed Defendant that he had to make a couple of stops first. The two men initially stopped at Amell's residence to drop off some cigarettes for his girlfriend. While there, Amell invited defendant inside to stay warm and to meet his girlfriend. Defendant testified that while inside Amell offered him a coat — the same coat that he was allegedly wearing when Officer Daly conducted his pat down and found the heroin needle.
The two men proceeded to a bar on Third Street where Amell picked up a package. Defendant testified that he remained in the car at all times and did not go inside. Defendant testified that "[Amell] c[a]me back and got in the car, proceeded to pull off when we were stopped."
Dayton police officers Lawrence Daly and Nathan Via stopped the car at approximately 11:30 p. m. to question Amell about his expired license tags. Officer Via approached the car on the driver's side to contact Amell, while Officer Daly approached on the passenger side where Defendant was seated. Amell failed to produce a driver's license and was subsequently arrested and charged with possession of drugs. As a result, Amell's car was towed.
As Officer Daly approached the passenger side door he could "smell a strong odor of beer coming out of the car." (Tr. 16). Because the "odor of alcohol was really strong," Officer Daly asked Defendant to step out of the car. Upon exiting the vehicle, defendant appeared "really tired" and "kind of wobbly . . . way more tired than he should have been at 11:30 at night." (Tr. 18, 21). "It was just an overall appearance of being under the influence of alcohol." Officer Daly further indicated that he was concerned for defendant's safety. Asked if the defendant posed a risk to himself, Officer Daly responded, "Well, as far as being a risk and being able to take care of himself, he was in the middle of Findlay and we were right near Springfield at the time that we got him. He lived far away, had no way of getting home. He had no means of getting around except to walk. He was intoxicated, and I couldn't just let him walk the streets." (Tr. 23, 24).
Daly testified the defendant was a little wobbly as he walked. "He wasn't going to fall over, but he, you know, he was definitely intoxicated. He was definitely walking a crooked line." (Tr. 26). Daly admitted that the defendant was not aggressive or offensively noisy. (Tr. 22).
Officer Via administered a horizontal gaze nystagmus test (HGN) which indicated that defendant was intoxicated. (Tr. 6). Officer Via further testified that additional indicators such as red eyes, slurred speech, and a "strong odor of an alcoholic beverage on or about his person" suggested that the defendant was intoxicated.
He testified he insisted the officers give him a breathalyzer but they refused. (Tr. 32). He testified that if the officers smelled alcohol, it was not on his breath, it was coming from the car. (Tr. 35).
Daly testified that the defendant was arrested for public intoxication under the city code and a search revealed crack cocaine in the pocket of the defendant's coat.
In granting the suppression motion the trial court explained:
 Although the issue in this case is close, this Court finds that the Defendant's arrest for public intoxication was unlawful. Other than being "a little wobbly," the record does not demonstrate that the Defendant was so intoxicated that he could not provide for his own safety. Easily distinguished from the intoxicated Defendant in Lowe, who was staggering and could hardly stand on his own, the Defendant in this case stepped out of the car and was able to stand on his own. Unlike the Defendant's uncooperative attitude in Lowe, there is no evidence in this case that the Defendant was offensively loud, aggressive, or refused to cooperate with the officers. In addition, the symptoms exhibited by the Defendant and the results of the sitting nystagmus gaze test, did not conclusively establish on their face that the Defendant was intoxicated. The symptoms the Defendant exhibited could suggest intoxication or fatigue. The symptom of slurred speech could suggest intoxication, however, the Defendant had a distinct southern accent and manner of speaking evident to this Court during the oral hearing. Furthermore, the mere odor of alcohol is not indicative of the amount of alcohol in an individual's system. The Defendant testified that the odor the officers smelled was coming from Mr. Amell's vehicle. Moreover, the Defendant testified that he had not been drinking on this particular night. Had there been conclusive evidence that Defendant had been drinking, the record still exhibits that the Defendant was not so intoxicated that he could not provide for his own safety. In addition, the officers testified that the Defendant appeared to be coherent.
 The Defendant testified that he had money with him, however, the officers did not give the Defendant an opportunity to find a way home. Officer Daly suspected that the Defendant had been drinking and did not want him wandering the streets of Dayton at 11:30 p.m. Merely having a couple of beers and walking down the road, without more, is not a sufficient reason for an arrest. Furthermore, this Court finds that there is a difference in arresting an individual for public intoxication and arresting an individual who has had a couple or more than a couple of beers. The evidence does not indicate that the Defendant was so intoxicated that he would cause physical harm to himself or perhaps danger to someone else. For the reasons set forth above, this Court finds that the Defendant's arrest was unlawful and there was no probable cause to arrest the Defendant for the minor misdemeanor of public intoxication.
In a single assignment of error, the State contends the trial court erred in not finding that the officers had probable cause to arrest the defendant.
When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of a witness. State v. Mills (1992), 62 Ohio St.3d 357, 366. Consequently, in its review, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Guysinger (1993), 86 Ohio App.3d 592,594. Accepting the facts as found by the trial court as true, the appellate court must then independently determine as a matter of law, without deferring to the trial court's conclusions, whether the facts meet the applicable legal standard. Orenelas v. UnitedStates (1996), 517 U.S. 690; State v. Klein (1991), 73 Ohio App.3d 486,488.
The defendant was charged with violating Dayton City Ordinance Section 90.14 which provides "No person shall be intoxicated in public or in a public place." The violation is a minor misdemeanor and R.C. 2935.26 provides the officer shall not arrest a person for a minor misdemeanor unless the offender requires medical care or is unable to provide for his own safety.
We agree with the trial court's finding that the police officers in this case did not have "probable cause" to arrest the defendant for public intoxication in violation of Dayton City Ordinance 90.14. It is evident that the City of Dayton did not intend to include the interior of private automobiles in the definition of public places.
D.C.G.O. 90.14 provides that no person shall drink beer or any intoxicating or spiritous liquor in public or in a public place. If the City considered the interior of a motor vehicle to be a public place, it need not have provided in D.C.G.O. 90.15 for the prohibition of the consumption of intoxicating liquor "in a motor vehicle." It is clear that the City did not consider the interior of a motor vehicle to be in public or in a public place. In any event criminal statutes must be strictly construed against the state and liberally construed in favor of the accused. See,Vermilion v. Stevenson (1982), 7 Ohio App.3d 170.
In Stateham v. State (1952), 95 Okla Crim. 232, 243 P.2d 743, the court recognized the proposition that a public place was a place where the public had a right to be, or was "open" to the public without any limitation except that required in the interest of safety and order. No one would suggest the public has a right to enter the private vehicle of another without the permission of the owner or other person authorized to give permission.
In State v. Lake (1991), 476 N.W.2d 55, the Iowa Supreme Court held that a passenger occupying a privately owned motor vehicle with the consent of the owner was not in a "public place," though vehicle was on a public street and in public parking lot within meaning of an identical public intoxication charge as this Dayton City ordinance. Justice Carter wrote on behalf of the court:
 We concede that some tension exists between our conclusion on this issue and certain language contained in State v. Kersh, 313 N.W.2d 566, 568 (Iowa 1981). We believe that the suggestion made in Kersh that a person in a private conveyance is in a public place for purposes of section 123.46 if the conveyance is located on a public highway or in a public parking lot is not sustainable under the section 123.3(23) definition. Many private places including personal residences are situated within the confines of a public area. Surely, this does not mean that the public is permitted access to those private locations. A right of public access is the touchstone of the section 123.3(23) definition of a public place.
 With respect to the private nature of automobiles, nearly thirty years of fourth amendment jurisprudence since the exclusionary rule of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), has made it clear that, absent some special circumstances, even police officers are not entitled to enter private automobiles on the public highways. See, e.g., State v. Sanders, 312 N.W.2d 534, 538 (Iowa 1981). We conclude that the magistrate was correct in finding that defendant was not in a public place while she remained in the motor vehicle.
See also, Finch v. State (1960), 101 Ga. App. 73, 112 S.E.2d 824.
Accordingly, the State's assignment of error is overruled. The judgment of the trial court will be Affirmed.
YOUNG, J., and KERNS, J., concur.
(Honorable Joseph D. Kerns, Retired from the Court of Appeals, Second Appellate District, Sitting By Assignment of the Chief Justice of the Supreme Court of Ohio).
Copies mailed to:
Todd T. Duwel
Christopher W. Thompson
Hon. Adele Riley